ALBANY,
August, 1805.

Tom.
v.
Smith.

### Thomas Tom *against* Paschal N. Smith.

ASSUMPSIT upon a policy of insurance on the profits of the cargo of the *Mary*, from *Batavia* to *New-York*, valued at six thousand dollars.

In the prosecution of the voyage insured, the vessel experienced such violent weather, as to be under the necessity of bearing away for *Saint Christopher's*, where, after a regular survey under a warrant from the admiralty, she was found to be irreparable, so as to carry on her lading, except at an expence of more than half her value. In consequence of this, as the revenue laws of the island forbade shipping the cargo in any other bottom, it was sold at much about the same price it would have yielded in *New-York*, and produced on the amount of the sales, a considerable profit. Without being informed of this latter circumstance, the plaintiff, on receiving advice of the being obliged to make for the port of necessity, communicated it to the underwriters, and, on the 5th April, 1799, offered to cancel the policy. The proposition was

Profits are insurable *eo nomine.* If profits only be insured, an abandonment is necessary when there has been no insurance on the cargo, and in such case it must be made early, that the insurer may elect either to pay only his loss, or to pay that, and the price of goods, at first cost and charges, therefore if the assured lie by, and take his goods and sell them, he cannot afterwards call

G g

ALBANY,
August, 1805.

Tom
v.
Smith.

on the under-
writer for any
loss on the pro-
fits. But whe-
ther this rule
will apply be-
tween different
sets of under-
writers on car-
go and profits
quere.

accepted by some, but refused by the defendant. In the June following, the *Mary* arrived, bringing with her bills of exchange for a part of the property sold, and the residue in rum and molasses, in which it had been invested by the plaintiff's agent, who was also part owner of ship and cargo. On arrival, the rum and molasses were taken by the underwritten and disposed of, but produced considerably less than they cost. The bills of exchange were not more fortunate; for several of them, after being returned and renewed, were finally unpaid, and on the whole, a loss was ultimately sustained.

In the latter end of *November* 1800, the plaintiff, in consequence of a decision of this court, on an insurance of profits on the same voyage, claimed for a total loss; and, on the 6th of *August* 1802, made a formal abandonment in writting.

Interest, inability to proceed with the original lading, and subscription being admitted, the plaintiff to substantiate his demand adduced an account of profit and loss on the cargo of the ship *Mary*, in which the net amount of the cargo sold at *St. Christophers*, after deducting commissions, freight, insurance, and all other charges, was credited and the loss of the bills of exchange, and produce received in payment, were debited.

Upon the above facts and statement, a verdict was taken for the plaintiff, for 657 dollars 50 cents, being the amount of the defendant's right with interest, from 30 day safter the 5th of *April*, 1799, subject to the opinion of the court, whether the total loss and interest, from the above period, could be recovered? or whether the interest ought to commence only from the date of the abandonment? or whether judgment ought to be for the defendant? The entry to be modified accordingly, and either party to be at liberty to turn the case into a special verdict.

*T. L. Ogden* for the plaintiff. We contend, 1st. That the voyage as to goods, having been defeated, we are entitled to recover as for a total loss of the profits. 2d. That in an insurance on profits, no abandonment is necessary. 3d. That if necessary, the abandonment is good, as, when it was made, the loss continued total. 4th. That interest

ALBANY,
August, 1805.

Tom
v.
Smith.

is due from the expiration of 30 days after the notice of loss given to the underwriters.

The recovery depends on the arrival of the goods; for if they reach their port of destination, though they come to a losing market, the underwriter is exonerated. It is admitted the voyage was defeated, from the irreparability of the vessel. If so, the right to recover attached. The question then arises whether an abandonment was necessary? On this point the nature of the policy will serve to guide. An insurance on profits, is a kind of heterogeneous contract, participating in the qualities of a wager, and of an interest policy. Of a wager, because at the time of subscription, there is no interest existing; of an interest, because there is a contingency on which it will arise, and these future possibilities the law permits to be insured. Some of the rules which govern on wager policies, are equally applicable to those on profits. There can be no average loss, nor can there be an abandonment; because the profits are inseparable from the goods. When they are insured, they, on abandonment, go to the underwriter on them, who runs the risk of losing by their sale, and therefore has a right to retain what may be gained. This shews the necessity of making the arrival, the criterion of the right to recover. It is admitted that the goods did not arrive, in consequence of the inability of the ship to perform her voyage; it follows therefore that a total loss accrued; and, though it was but technically so, still an abandonment could not be necessary, because it could give no control over the goods, and conveyed no property, or interest in them. To abandon therefore was perfectly nugatory. If a loss continue total to the time of action brought, in no case is an abandonment necessary, to entitle to recover the full amount of the insurance. *Earle* v. *Shaw.** If it be not total, then indeed, indemnity for a partial injury is all that can be demanded. To ascertain whether the loss be total or partial, we must look to the final result.† If that be done here, it will be seen not only that the goods never arrived, but that an actual loss on the sales has been sustained. This is established by the account which was exhibited. The only question then will be, from what period ought interest to be calcu-

* *April, 1800.*
See 2 *Vol.* 409

† See *Church.*
v. *Bedient, &*
*Hallett* v *Pen-*
*ton,* 1 *Caine's*
*Ca. in Err.* 1.1
to 43.

lated? As abandonment was needless, the right to compensation arose on the expiration of 30 days after demand, the verdict is therefore correct, and ought to stand.

*Pendleton* and *Harison* contra. By the decision of *Abbott v. Sebor*, this court settled that an insurance on profits, was an interest policy. Such it must be, because in England, insurances of this sort are permitted. *Le Cras v. Hughes, Marsh.* 84. *Grant v. Parkinson, Ibid* 111. If so, an abandonment was necessary, for whenever the property remains in specie, it exists, unless in the hands of a captor, in the nature of salvage, and must therefore, as a valuable interest, be relinquished to the underwriter. Without denying the doctrine of *Earle v. Shaw*, we say it does not apply, because the assured here, has meddled with and assumed a disposition of the property. This case then is exactly within the principle of *Mitchell v. Edie*, 1 *D. & E.* 608. and *Allwood v. Henkle, Park,* 172. The plaintiff has traded on the subject of insurance. After remitting, renewing, and receiving damages on some of the bills, he comes on the underwriter for a total loss; because a part of them have proved bad. We contend this policy is on the incident, and that the plaintiff takes to it, by choosing to retain the principal. The court cannot tolerate the idea, that after an insurance on profits *eo nomine,* the assured shall, at the port of necessity, receive them, and after managing them in his own way, demand a total loss, because they ultimately turn out deficient. If the determination is to be regulated by the rules which govern wager policies, there cannot be a recovery, as the vessel did arrive. It is no answer to say, the policy was on profits. In *Kulen Kemp v. Vigne,* 1 *D. & E.* 304, the assurance was on the cargo, but as the ship did arrive, the court held the underwriter would, allowing it a wager policy, have been exonerated.

*Hoffman* in reply. In *Kemp v. Vigne,* the insurance was expressly on the arrival of the ship; not of the goods. On the point of abandonment, it is sufficient to observe, that when a demand was made for a total loss, the insurer had it in his power to make it equivalent to abandoning, by paying his subscription. It is a mistake to say, the profits have been diminished by trading on them. The

actual proceeds of the cargo sold, that which was given for it, has been realized, and credited to the underwriter. Upon this principle even, there is a total loss. Therefore, whether the making a profit, or the arrival of the goods is to be the criterion, there must be a recovery, for neither one, nor the other has happened.

*Per Curiam*, delivered by LIVINGSTON, J. It is not made a question, whether profits are an insurable interest. Whatever objections lie to the practice, we have heretofore considered them as such, and the counsel of both parties have reasoned on that supposition. In *France* nothing but ship and cargo are regarded as proper subjects of insurance. In *England* and in this country, it is not unusual to insure profits, *eò nominè*, and yet no decisions are to be found on the construction or effect of such policies. We are at liberty then to adopt such rules, not inconsistent with the written contract, as shall render them as little as possible of the gambling kind. Under no pretext indeed can they be called wagering policies, which exclude all idea of interest in the assured. It would be hard therefore on the underwriter, to rank them in this class, and thus deprive him of the benefit of salvage. A premium on profits is not greater than on goods, and yet it certainly ought to be much higher, if a total loss may be demanded, without any part of the profits, however considerable, going to the underwriters. It is more equitable to consider these insurances as a species of valued policies on cargo, which they are in substance, although not in form. It is surprising, that in a country where merchants may insure their adventures at almost any value, this practice should ever have been introduced. The more the subjects of insurance, on any one voyage are multiplied, the more confusion and embarrassment will, in cases of disaster, be experienced. It will often perplex the most skillful broker so to adjust a loss, as to do justice to the different classes of underwriters. I am disposed, therefore, to regard these insurances as another way of valuing the goods, and that in total losses like the present, the underwriter has such an interest in the property, as to be entitled to an abandonment. What would be the effect

of abandonments to the respective underwriters of cargo and profit, I will not undertake to say. Perhaps on tendering an indemnity, the former might be obliged to cede their interest to the others, *or* to account with them for the profits, but here being no abandonment of the cargo, this difficulty is not before us. We are only to determine whether as between the owner of cargo, and his insurer of profits, it is reasonable to permit the former to manage the property, as he pleases, and at a period even so distant, to call on the latter for a total loss. If an abandonment be necessary, as I think it is, the one, on which the plaintiff relies, was not in time. So far from giving any intimation of such design, he takes back the premium from several underwriters, and as to them cancels the policy. He then proceeds by his agent to sell the cargo, takes bills in payment on which there is a loss, and finding, he has not made out to his wish, calls on the defendant's for the whole amount of their subscription. This case does not fall within the reason of those in which it has been settled, that an abandonment is never too late while the loss continues total. Perhaps it would have been better in all cases, to drive the assured to an early election, whether he will abandon or not, and not leave it in his power, as it now is, to run the underwriter to an immense expense, in attempts to recover the property for his own benefit, and then throw it upon him, when he can no longer take any one step that may be of advantage: but in opposition to the positive regulations or practice of most maritime countries, and of *England* among others, where abandonments must be made within a reasonable time after notice of loss, we permit the assured to lay by for years, in case of a capture or other technical total loss, provided the capture or other accident continues. In these cases, however, the property is out of the hands of the assured, who is pursuing measures to recover it; but it is different here, where the loss properly speaking, was never total. The cargo was not, as in case of capture, taken from the owner. On the contrary, he chuses to treat the loss as partial—he directs a sale of it on his own account, and finally abandons, but not until after a lapse of three years, when

in fact there is nothing to surrender, but what he has already received, and means to retain. Whatever might have been the claim of the defendant on the insurers of the cargo, if an abandonment had been made to them (on which my opinion is reserved) I think as between him and the owner, he had a right to pay the first cost of the goods, with all the charges and profits according to valuation, and on those terms to insist on an assignment. To enable him to assert this right, there ought to have been a seasonable abandonment, which, notwithstanding the decision just referred to, should always be made, as soon as possible, where the disaster, as was the case here, is of such nature as not to divest the assured of his property. This is a case of some novelty, on which precedents throw little, if any light. It is very probable, therefore, that my view of it may be incorrect, but after mature reflection, I cannot come to any other result, satisfactory to my own mind. If wrong, the precedent will not work much mischief, for it cannot be long before underwriters, in this State at least, discover the folly of insuring, unless at a very advanced premium, either profits or freight. The latter, it has already been determined, or at least so much as is earned, *even during the voyage insured*, after abandonment of the ship, goes to her underwriters, and if profits on goods, in like cases, should be adjudged to belong to the assurer of that subject, there would be none, or very little salvage in either case, so that while the underwriters on ship and cargo, would be receiving enough, and perhaps more than enough, to reimburse them, those on profits and freight may pay a total loss on the same voyage, and not receive a farthing from the subjects insured. Our opinion is that the defendants have judgment.