NEW-YORK,
May, 1806.

Suydam &
Wyckoff
v.
Mar. Insurance
Company.

## Suydam and Wyckoff *against* the Marine Insurance Company.

THIS was an action on a policy of insurance on the *cargo* of the sloop *Mason's Daughter*, *at and from New-York to a port or ports in the island of Cuba, and from thence back to New-York.* The policy was underwritten on the 7th *January*, 1802, for the sum of twelve thousand dollars, at a premium of five per cent, and expressed to be on goods out, and on merchandize or specie, or both, home. It contained also, the usual printed clause, " to be free from any loss which may arise in consequence of a seizure or detention for, or on account of illicit or prohibited trade." The loss was stated specially in the declaration : " That the vessel arrived at *St. Jago de Cuba*, her port of destination, but was not allowed to enter there, and after waiting twenty days sailed for another port in the island, in going to which she met with adverse winds, that drove her into the *Bite of Leogane*, and for fear of the Brigand boats, she went into *Port Republican* in *St. Domingo*, where the cargo was forcibly taken out, and sold at a great loss. On receiving advice of this circumstance, the insured abandoned for a total loss, and in their letter assigned as a cause that the vessel had been refused an entry at *St. Jago*, and that the voyage was thereby defeated. It was held that the denial of entry at *St. Jago* was not a loss within the policy ; but as to the effect of a denial to trade, if the voyage insured had ended there, *dubitatur*. In making his abandonment, the insured must assign the true cause. If he assign an insufficient cause, he is bound by it, and cannot avail himself of a subsequent event, without a new abandonment.

Insurance on the cargo of a vessel, at and from *New-York* to a port or ports in the island of *Cuba*, and thence back to *New-York*. The policy contained the usual clause, to be free from any loss arising in consequence of illicit trade, &c.

NEW-YORK,
May, 1806.

Suydam &
Wyckoff
v.
Mar. Insurance
Company.

vessel arrived at the *Moro Castle*, in the island of *Cuba*, on the 1st *February*, 1802, where she was necessarily detained until the 24th day of the same month, and the said sloop was, by certain persons exercising authority there, and unknown to the plaintiffs, prevented from prosecuting her voyage to *St. Jago de Cuba*, for which she was destined ; that she afterwards departed from the *Moro* for *Saint Juan Los Remedios*, another port in the same island, and while proceeding for that port, was by violent storms, gales of wind, &c. forced and driven into *Port Republican*, in the island of *Hispaniola*, where the said vessel was by certain persons unknown to the plaintiffs, and exercising authority at that place, prevented from further prosecuting her voyage to the said port of *St. Juan Los Remedios*, or any other port in the island of *Cuba*, and the goods there, by the said persons, &c. were forcibly unladen and taken out of the possession of the plaintiffs, and against their will and consent, by which means, and by other unavoidable accidents and misfortunes that happened to the said vessel and the said goods, and by perils insured against in and by the said policy, the goods became and were totally lost to the plaintiffs."

The cause was tried before Mr. Justice *Tompkins*, at the *New-York Sittings*, on the 19th day of *December*, 1804. The following are the material facts which appeared in evidence on the trial.—The *Mason's Daughter* sailed from *New-York* on the 12th *January*, 1802. The master, who was the consignee, was ordered by the plaintiffs to proceed first to *St. Jago de Cuba*, and there dispose of such part of the cargo as could be sold to advantage, otherwise to proceed to the north side of the island, to the port of *St. Juan Los Remedios*, and there sell the residue, or, in case it could not be sold there, to go to *Matanzas*, on the same side of the island. The master was furnished by the plaintiffs with a *passport* from the president and intendant at *Havanna*, certified by the *Spanish* consul at *New-York*, the 11th *January*, 1802, and who testified on the trial, that this was the first he had granted out of four, among those that had been furnished to him by the governor of *Cuba*. On his arrival

NEW-YORK,
May, 1806.

Suydam &
Wyckoff
v.
Mar. Insurance
Company.

at the *Moro Castle*, the master applied to the chief officer of the customs, who, after inspecting his papers and passport, directed him to apply to the governor, who on examining the papers, gave his opinion that the vessel might be permitted to enter. He returned with the papers to the officer of the customs, who referred him to another superior officer, who after examining the passport, said it was not sufficient to authorise an entry on account of its date ; and that he had positive orders not to permit any *American* vessel to enter under similar circumstances. As the governor and the other officer were of different opinions, the master, by advice of a merchant there, was induced to wait about twenty days, in hopes of being allowed to enter. Being disappointed, he set sail with a view to go to *St. Juan Los Remedios*, but meeting with adverse winds, he was forced into the *Bite of Leogane ;* and being afraid to anchor in the *Bite* on account of the *Brigand* boats which infested that place, he thought it prudent, with the advice of the crew, to go into *Port Republican*, until the wind should be favourable for proceeding to *St. Juan Los Remedios ;* but he was not allowed to depart from *Port Republican*, and was compelled by the authority of the place to land his whole cargo, and sell it at the price that was offered, and at a great loss. It was proved, that several *American* vessels had been permitted to enter at *Matanzas* with similar passports ; and that another *American* vessel had been allowed to enter at the *Havanna* in *February* 1802, without any passport or other paper from the *Spanish* consul.

On the 3d *April* 1802, the plaintiffs addressed a letter of abandonment to the president of the Marine Insurance Company, informing him, that they had received " advice from the master of the *Mason's Daughter*, dated at *Port Republican*, the 17th *March*. That presuming he was not permitted to enter at *St. Jago de Cuba*, the place of destination, they considered the object of the voyage defeated, and therefore they abandoned," &c.

It was agreed by the counsel for the parties before the trial, that the jury were not to be troubled with calculations.

NEW-YORK, and that in case the plaintiffs recovered, the parties would ad-
May, 1806. just the accounts between them.

Suydam & It appeared to be the practice of the defendants in cases
Wyckoff
v. of claims for losses, to deliver the papers to a Mr. Ferrers,
Mar. Insurance their agent, to calculate and adjust the amount; and a paper
Company. signed by him was produced in evidence, on which an ac-
count of the loss and the amount was stated.

The judge charged the jury, that if they thought the stay
at St. Jago de Cuba reasonable and proper, and that the ves-
sel was actually forced by adverse winds into Port Repub-
lican, and that the going there was bona fide, for greater
safety, these circumstances would form no objection to
the plaintiffs' right to recover; and that if they believed that
the cargo was taken out, and ordered to be sold by the public
authority at Port Republican, the plaintiffs would be entitled
to recover for a total loss. But that they might find either
for a total or a partial loss, as they deemed right, or they
might find a general verdict, and in either case the amount
would be adjusted by the parties according to their agree-
ment for the purpose.

The jury found a verdict for the plaintiffs for 14,310 dol-
lars, subject to deductions by the agreement of the parties.

On the motion to set aside the verdict, the following
points were insisted on by the defendants' counsel : 1. That
the plaintiffs could not recover for any other cause than the sup-
posed loss, by reason of the vessel's having been refused an en-
try at St. Jago de Cuba. 2. That from the evidence, the plain-
tiffs were not entitled to recover even on that ground. 3. That
no judgment could be rendered on the verdict as found.

Benson for the defendants. Two events are stated in the
declaration as the ground of the plaintiffs' claim to recover
for a loss within the policy. 1. The refusal to permit the
vessel to enter at St. Jago de Cuba. 2. The forcible re-
straint at Port Republican. The first event is not within
any of the perils described in the policy; and to entitle the
plaintiffs to an indemnity on that ground, there should have
been a special provision in the policy to that effect. The
prohibition against entering at St. Jago, may be the mis-

NEW-YORK, May, 1806.

Suydam & Wyckoff v. Mar. Insurance Company.

fortune of the assured, but it is not a peril for which the assurers are liable. The vessel was turned away, because her passport was not regular, or for some objection to the date ; but it is the duty of the assured to be provided with all regular papers adequate for the prosecution of the voyage. If the voyage has been lost for this cause, the failure must be imputed to the plaintiffs. After the refusal of a permission to enter, the master staid three weeks waiting for a change of opinion in his favour. Admitting that he acted with good intention, this useless delay in law amounts to a deviation,* and the insurers are not answerable for its consequences. He ought to have left the *Moro*, immediately after the refusal to enter, and not have waited with illusive hopes, suggested by his own wishes, and not founded on any rational calculation.

*1 *Marshall*, 170. 2 *Marshall*, 405.

This vessel, with the papers she had on board, could not have been legally admitted into a *Spanish* port, and must therefore be considered as inadmissible in any port in the island. The royal instructions or orders are, in this respect, the law. The master, however, sailed with a view to go to *St. Juan Los Remedios*, and from thence to *Matanzas*, to seek an entry. This, according to the policy, he had no right to do. The insurance is from port to port, to a market, which is different from going to find an entry with a bad passport. The cause of the abandonment is the refusal to allow the vessel to enter at *St. Jago de Cuba*. The insured are not bound by an abandonment unless it be accepted, and they may revoke it. If accepted, the property is transferred. When nothing is said on the part of the insurer, the question at whose risk the property is afterwards to remain, must be determined by deciding on the right to abandon at the time. Here the event having happened, and the insured having abandoned, he must abide by his own act ; and if it be decided that he had no right, the property must be considered as remaining at his own risk.

The declaration in this case is for a total loss, and yet the proof shews only a partial loss, the extent or amount of which does not appear. If the court should be of opinion

NEW-YORK,.
May, 1806.

Suydam &
Wyckoff.
v.
Mar. Insurance
Company.

that the plaintiffs were entitled to recover for a partial loss, only, there must be a new trial to ascertain its amount. The verdict is informal, and a mere nullity. It cannot be corrected here. The cause ought to be sent back to another jury, when the defendant may have an opportunity of demurring to the evidence. The agreement of the counsel meant no more than that if the plaintiff recovered for a total loss on the abandonment, the parties would adjust the amount between them. This is not a verdict taken by consent.

*Radcliff & Riggs* for the plaintiffs. This is an insurance out and home, and to one or more ports in the island of *Cuba.* The privilege of going from one port to another is not strictly confined to the purpose of trading. The trade with the *Spanish* colonies, though generally illicit, is frequently permitted. Sometimes it is open at one place, and shut at another. Entries by other vessels were in fact made in the same month. It is important, therefore, on such a voyage, that the insured should have the right of going to various ports, and it is immaterial whether the policy express that he may do so for the purpose of seeking an entry.—— He is justified, under the general permission, to go from port to port in the hope of being allowed to enter. The nature and course of trade with the colonies of *Spain*, is well known both to the insurers and insured. If the court take notice of the laws of a foreign country, they will also take notice of the restrictions, suspensions or exceptions which may from time to time exist. If the insurers will knowingly insure a trade to the *Spanish* colonies, they must be considered as insuring all legal and proper attempts to enter for that purpose, though they are not answerable for any illicit or improper conduct. The denial of entry at *St. Jago de Cuba*, is not the sole ground on which the plaintiffs claim a total loss, but so far only as it is connected with all the consequences of that refusal. But even that fact alone would be sufficient, for as the master was thereby compelled to seek another port, it may be considered as the real cause of the loss which happened. There can be no objection as to the vessel's papers. It is

NEW-YORK,
May, 1806.

Suydam &
Wyckoff
v.
Mar. Insurance
Company.

enough that she had all the documents required by the laws of the *United States* for an *American* vessel. The *Spanish* passport was an unnecessary harmless paper, and whether valid or not for the purpose for which it was granted, is perfectly immaterial. The *Spanish* consul thought it useful and effectual.

An unreasonable delay, it is true, will amount to a deviation; but it is a question for a jury to decide, whether the master's conduct be proper, *bona fide*, and reasonable. They have found it to be so, in the present case, and their decision is conclusive as to that fact. It is not denied, that after an abandonment, the recovery must depend on the right to abandon, as determined by the court. The insured is not bound to revoke his abandonment, but may recover according to his proofs. A total loss is to be understood, either in its natural or legal sense. This may be considered as a technical total loss, by the refusal of the permission to enter at *St. Jago*, and as continuing so as to support the abandonment; or as an actual loss of the goods insured, as the plaintiffs were divested of their property by *superior* power. For, though the goods were sold afterwards, it was against the will of the master, who had no dominion or controul over them. The abandonment was made on the letter of the 17th *March*, written at *Port-Republican*, and not upon any previous information from *St. Jago*. The right to abandon for the event which happened at *Port-Republican*, being unquestionable, if the plaintiffs have in their letter assigned another and insufficient cause, it will not affect their right as long as there was a valid cause existing. The conduct of the master in going to *Port-Republican*, appears to have been *bona fide*, the result of necessity, and for his self-preservation.

THOMPSON, J. Does it appear that this letter was written by the master before or after the seizure of the goods?

*Radcliff.* It must have been after the seizure, for it was dated near a fortnight after his arrival.

Here then is not a mere technical total loss, but an actual total loss of the property which was taken by force from the

NEW-YORK,
May, 1806.

Suydam &
Wyckoff
v.
Mar. Insurance
Company.

* 2 *Caines* 208.
*Lawrence* v.
*Sebor.*

possession of the plaintiffs, and has never been returned to them : so that the loss has continued total to the present day. It has been repeatedly decided,* that an abandonment is not essential if the loss be actually total, and continues so to the bringing of the action or to the time of trial.

Why did the defendants refer the case to their agent Mr. *Ferrers*, to calculate the amount of the loss, if they did not mean to pay. The account exhibited by him clearly shows, that his calculation was made on the basis of a total loss.—— The charge of the judge ascertains what was understood to be the agreement of the parties. And the verdict of the jury was clearly for a total loss. But if there is any doubt or uncertainty, the court ought, under this agreement, to correct the verdict, and not grant a new trial.

*Hoffman* in reply. Though Mr. *Ferrers* be the agent of the defendants, to state the amount of losses in cases referred to him, yet his reports are not conclusive on the insurers. If, however, from the whole case before them, the court have sufficient *data* on which to give judgment for a partial loss, the verdict ought to stand ; but the verdict furnishes no means for such a calculation. The rule of calculation is the invoice price of the goods compared with the net proceeds at *Port-Republican*, and not on the return cargo. It does not appear from the case at what time the sale was made. If the insured mean to found their right to recover on the abandonment, they must shew clearly that on the 3d *April*, 1802, the cargo had been forcibly taken and sold, otherwise no right to abandon, even on that event, existed. But the cause of abandonment assigned, is not the forcible sale of the goods by superior power, or any perils of the sea, but merely a refusal of entry at *St. Jago de Cuba*. In every view, this case presents difficulties, not easily to be surmounted. Two questions are to be considered. 1. Does the assurer take upon himself to assure the entry of the vessel into a port? 2. Can the assured, after assigning one cause of abandonment, assume another, and recover for a different cause?

NEW-YORK,
May, 1806.

Suydam &
Wyckoff
v.
Mar. Insurance
Company.

§ See the case of *Schmidt* v. *The United Insurance Company*, decided this term, *post*.

1. The most analogous case is where the port of destination in the policy is blockaded, but it has never yet been decided that the insured is entitled to abandon, because his vessel has been turned away from a blockaded port.§ If the defendants are not responsible for the refusal of entry, they are not answerable for any of the consequences of that refusal. But the assured undertake for the legality of the trade. Why was this vessel denied an entry? Because it was illegal. Now, by the terms of the policy, the defendants are not responsible for any illicit trade.

Again, in case of a legal trade, an unreasonable delay would amount to a deviation. In the present case, knowing the trade to be illegal, the master, after the first refusal, ought not to have waited a day, with the view to gain admittance. It is true, the policy allows him to go from port to port; but this privilege cannot be extended to a permission to stay at a particular port upon a speculative probability of gaining admission. Suppose after laying off the harbour for that purpose, two or three weeks, the vessel had been lost by the perils of the sea, would not the loss have fallen on the assured? His conduct here ought to be subject to a stricter rule than in cases of delay arising in the prosecution of a legal trade. What shall be considered as a reasonable delay, is not a mere question of fact, but is to be determined by the court.

2. In the policies of insurance used in this city, there is a peculiar clause, that the loss is not to be paid until thirty days after proof thereof. This was introduced for the purpose of giving the insurer time to deliberate on the abandonment, and to decide whether he would accept it or not, as well as to inquire into the fairness of such loss. But if the assured could in his abandonment assign one cause of loss, and, afterwards, recover for another and different cause, this clause would be, in a great measure, nugatory. Any investigation of the facts would be useless, if other facts might afterwards be adduced to support the abandonment. The letter, of the 3d *April*, alleges no other ground, but the refusal of entry at *St. Jago de Cuba;* if the plaintiffs meant

NEW-YORK,
May, 1806.

Suydam &
Wyckoff
v.
Mar. Insurance
Company.

to rely on a different event, it ought also to have been mentioned, that the insurers might have had an opportunity to consider it, and to determine as to their acceptance of the abandonment.    As an abandonment is requisite to vest the property in the insurer, and to enable him to take measures for its preservation, it is essential that the true situation of the property, or cause of abandonment, should be made known.    Every fact should be disclosed that would enable him to elect his course of proceeding in regard to the property ; for as long as the thing is in existence, there is a hope and a chance of recovering its possession.    And this is equally necessary, though the property may have been converted into money by a sale.†

† *Park* 172.
*Marshall* 498.

It was asked by one of the counsel, whether the *debenture* was to be deducted from the amount insured :  And *the court* said, that it had been decided in the case of *Gahn & Mumford* v. *Broome*, *July Term*, 1799, that the *debenture* was not to be deducted.

LIVINGSTON, J. delivered the opinion of the court.

It is said, here was no abandonment, or, that the reason assigned for it, was not sufficient, and that, therefore, the abandonment made, was a nullity.    A denial of entry at the port of destination, without any seizure or arrest by government, appears to me, after considerable reflection and many doubts, not a loss within this policy, which contains an express agreement, " that for a seizure or detention " on account of *prohibited trade*, there shall be no remedy." How then can underwriters, who do not assume the greater risk of seizure, which in common cases constitutes a technical total loss, be answerable for a smaller one, proceeding too from the same cause, that is an *illicit trade ?*    But as the *Mason's Daughter* had a right to go to another port, and was driven into *Port Republican* on her way thither, it is supposed that the abandonment must be considered as founded on the latter accident, especially as it was not made until after her arrival there, and intelligence of it received here. But if this were really the cause of abandoning, it is not the one assigned by the assured.    On the contrary, it is placed en

NEW-YORK,
May, 1806.

Suydam &
Wyckoff
v.
Mar Insurance
Company.

tirely on the refusal to permit an entry at the first port. It will hardly be said that to constitute a valid abandonment, it is not necessary to state the true cause. Though no form be prescribed for this act, yet care should be taken, that it be unconditional, explicit, and on sufficient ground; and, particularly, that the accident occasioning it, be described with certainty, so as to enable an underwriter to determine whether he be bound to accept. If he be not, he will of course refuse, and neglect to take measures for its preservation, which is one object of making an abandonment. The assured here, having relied on matter which was not a justifiable cause, must be bound by it, and shall not be permitted to avail themselves of a subsequent accident, without making a new abandonment. *Emerigon*† appears to be of this opinion ; he considers an abandonment absolutely null, if at the time there was neither " a capture, nor shipwreck, nor stranding, " nor arrest of princes, nor innavigability, nor a total loss ;" and adds that " an abandonment founded in error, *produces no effect.*" Our opinion then is, that here was no valid abandonment, and though it be settled with us, that such an act is never too late, while the loss continues total, yet we have not yet said that a suit can be maintained without any abandonment at all, or on one assigning a reason which justified a refusal to accept.

† 2 Vol. p. 197.

Another objection to a recovery, which applies as well to a partial as a total loss, is, that the long stay at *St. Jago de Cuba,* or at the mouth of the river, amounted to a deviation ; but the jury having determined otherwise, we are satisfied to consider this question at rest. I will only add that the agreement of counsel, to adjust the accounts, must have referred only to the case of the defendants being liable for a total loss, and that, therefore, the plaintiffs have no right, under that agreement, so to model the verdict as to give them what would be a compensation for a partial loss, admitting a right to that extent to exist. To ascertain this point, and what in such case will be a proper rule of damage, there must be a new trial with costs to abide the event of the suit.

I observe further that it is not intended to say, what would

Vol. I.          c c

be the effect of a denial to trade, if the voyage insured had ended at *St. Jago de Cuba*, that is, whether the risk would have ended there, or have continued to another port. The assured having a right in this case to go elsewhere, that question is not before us.

New trial granted.