Til&hman C. J.
was of opinion that the judgment should be entered for the plaintiffs. His reasons are given in the next succeeding case.
Yeates J.
The facts out of which the law arises in the present case have been already stated.
The defendants resist the payment of the loss on the ground that the abandonment of the coffee insured was not made to them in a reasonable time. The brig was captured by the French privateer Jena on the 7th December 1807, and the abandonment was not made until the 10th September following; that is, in the course of nine months and three days after the capture. The plaintiffs insist that the first information which they received of judicial proceedings had against the brig and her cargo, was by a letter from the widow Yanween and Son, dated at Amsterdam 27th June 1808, which conveyed to them intelligence of the condemnation in the imperial council of prizes at Paris on the 8th of the same month, and that the abandonment was made immediately after the receipt of that letter. They have con-that the of a neutral as a belligerent is a total loss, which entitles the assured in common cases to abandon, according to the decision in Rhinelander v. Insurance Company of Pennsylvania, 4 Cranch 29, yet this does not preclude the assured from abandoning upon a condemnation of the property, which is a new substantive ground of cession; and that in this instance, the clause in the policy, introduced for the benefit of the insurers, that the insured should not abandon in case of capture until after sixty days’ detention, unless previously condemned, takes the plaintiffs out of the general rule, and shows the clear understanding of the contracting parties to have been, that the abandonment should not be hastened but postponed.
The doctrine of abandonment rests on the broad basis of natural equity and moral honesty. Insurance is a contract of indemnity, and the insured ought to recover no more than the amount of the loss actually sustained. If he be allowed to recover for a total loss, and yet retain the property saved, he would derive a benefit in direct opposition to the spirit of his insurance. Abandonment necessarily presupposes that the whole property is not lost; for it is impossible to cede or abandon that which does not exist. It is agreed on all *403 hands, that it is at the election of the insured, whether they will abandon or not; and the question here is, whether they may not abandon at any time, while the loss continues total ?
This question has been determined in the affirmative in several eases, in the Supreme Court of New York. Earl v. Show (in 1800), 1 Johns. Cas. 317; Roget v. Thurston (in 1801), 2 Johns. Ca., 248; Bordes v. Hallet (in 1803), 1 Caines 449 ; Lawrence v. Sebor (in 1804), 2 Caines 207, 208; Steinbach v. Columbian Insurance Company (in 1804), 2 Caines 132, which was affirmed on error brought in 1805; 2 Caines in Error 161, 174; Tom v. Smith (in 1805), 3 Caines 245 ; Suydam and Wyckoff v. Marine Insurance Company (in 1806), 1 Johns. 191; and in Livermore v. Newburyport Insurance Company (in 1804), 1 Massa. T. R. 281, Dana Chief Justice admits it to be generally true, that the right of the insured to abandon remains while the loss continues total; but it supposes that no alteration has taken place in the circumstances of the case.
I accede to the authority of these cases so far as they relate to the point before us, and on the fullest reflection am *of opinion that the determinations comport with the true measure of justice between the contracting parties, according to the terms of their agreement, and will best conduce to the interests of commerce in general. I cannot bring my mind to assent to the defendants’ positions, that the plaintiffs ought not to recover for a total loss, because there was no seasonable abandonment, nor for a partial loss, because the loss was total in its nature ; or in other words, upon a fair contract of indemnity, where the insurers have received their stipulated premium of ten per cent., that the gi’eater the loss the insured should suffer, the less the insurers should pay, not even a single cent.
The grounds on winch the British adjudications in matters of abandonment proceed, in my idea are, that where a loss technically total has occurred, but which by subsequent events has become partial, the insured shall not, by lying by and abandoning after the nature of the loss has been changed, and after having taken the chance of a market, recover for a total loss. He shall in such case be compensated according to the extent of the injury received from one of the perils expressed in the policy; but will not be permitted by an abandonment then made, to convert that which is at the time a partial into a total loss, merely because it had once technically subsisted. The principle does not hold, where the loss remains actually total at the time of the abandonment, and continues so to the very period of commencing the ac *404 tion. I wholly agree with the remarks of Chancellor Lansing in Smith v. Steinbach, 2 Caines in Error 173. “ The doctrine of abandonment is only adapted to the case of a partial loss, connected with a total one by the operation of law. It is expressly founded on the consideration, that the subject insured, though not totally annihilated, (for then nothing would be left for abandonment) is so much deteriorated by the perils insured against, as not to make it worth holding to the insured. It is a doctrine calculated to distinguish between average and technical total loss, as far as respects the insurer, not to create new duties or impose new burthens on him, but to protect him from practices to which he might be exposed, by speculations on the state of the market or other contingencies, which may influence the value of the property insured.
*1 cannot discover in what particular insurers are prejudiced by an abandonment, while the loss continues total. Mercantile law founded on the highest equity imposes no useless duties. The insured is authorized by the terms of the policy to prosecute for the recovery of the property. If he succeeds, it will go in diminution of the loss ; if he miscarries, he has acted only according to his authority, and as the loss is then total, the insurer is responsible for the full amount. The judicious compiler of note (140) in 4 Walsh’s American Review, appendix 155, has justly remarked, that as to the danger that the assured will not make due exertions to recover the property, his interest is thought to be a sufficient security in that respect. For if there is but little or no hope, it is to be presumed, that he will naturally abandon as soon as possible, and then the insurer may act as he pleases ; if on the contrary there is a prospect not only of recovery but of gain, he will exert himself to the utmost to attain the object. Besides, there is nothing to prevent the insurer, who has an eventual interest in the property, from making exertions on his side. His right to do so cannot be denied. And after all, if the insured by his own misconduct or neglect, should prevent the property from being finally recovered, the underwriter may on that very ground refuse to accept the abandonment, and in an action for a partial loss the court will consider as saved, what might have been so but for the default of the insured.
It is sufficiently obvious that an individual merchant who plans his voyage, possesses more effectual means of prosecuting his claim with success upon a capture, than any body of underwriters, who cannot be supposed to have agents on the spot to superintend their multiplied concerns. This we *405 well know, that insurers uniformly refuse to receive abandonments on the slightest pretences, and the clause in the policy under consideration, that the insured should not abandon in case of capture, until sixty days after detention, unless previously condemned, abundantly shows the sense of the company, when they underwrote the policy.
In every light in which I have been able to view this case, I am of opinion that judgment should be entered for the plaintiffs for a total loss.
'"Brackenridge J.
was also of opinion that judgment should be so entered, and gave his reasons in the succeeding case.
Judgment for plaintiffs.