## PERRY *v.* CARR.

The sale and removal by a tenant at will of manure which has been manufactured by him on the premises in his occupancy, in due course of husbandry, is a permanent injury to the owner or reversioner; is in law voluntary waste; and for such an injury the owner may maintain the action of trespass *quare clausum fregit.*

TRESPASS *quare clausum,* and taking and carrying away twenty cords of the plaintiff's manure, on the 15th day of April, 1860. Writ dated April 16, 1860. Plea, general issue.

It appeared that one Darius Bowers had, prior to October 21, 1859, owned the premises in question, subject to a mortgage to one Flint; and that, on said 21st day of October, 1859, said Bowers and his wife conveyed the same to this plaintiff by a deed of quitclaim.

Said Flint had, however, previously sued his mortgage against said Bowers, and had, at the October Term, Court of Common Pleas, 1858, recovered a conditional judgment, upon which (January 7, 1859) a writ of possession issued, returnable the third Tues-

day of March, 1859 ; and on the 14th day of March, 1859, posses-
sion of the premises was delivered to Flint by the officer.   On the
back of the writ of possession is the following :

"March 14, 1859.  I have this day received full seizin and pos-
session of the within named premises, of John M. Milton, Deputy
Sheriff.

THOMAS W. CARR, Att'y for Lyman T. Flint."

Said Carr continued to occupy the premises in this way, under
Flint, until October 27, 1859, on which day said Flint made the
following assignment on the back of his writ of possession :

"For value received I hereby sell and assign this execution,
and the judgment on which the same issued, and all my interest
under the same to the premises herein described, to William Perry,
of Hopkinton, his heirs and assigns for ever, reserving to myself all
my claim against Thomas W. Carr for the rent and use of said
place and premises.

LYMAN T. FLINT.  [Seal.]

October 27, 1859."

On the 21st day of November, 1859, said Perry, the plaintiff,
served upon the defendant (Carr) a notice in writing, in usual form,
to quit and deliver up to him (Perry), on the 29th day of the same
November, the possession of these premises, described as occupied
by Carr and owned by the plaintiff; but no demand for rent had
been made by said Perry on said Carr previous to such notice.   It
appeared that said Carr had remained in possession of the premises
in question until after the commencement of this suit, and that this
plaintiff never had, until this suit was commenced, been in actual
possession of the premises, nor had he received any rent of said
Carr or any body else ; and no agreement or contract of any kind
was ever made between the plaintiff and Carr in regard to the
defendant's possession or occupancy of the premises.

This action was tried by the court, and, upon the above facts
being proved, the defendant moved for a nonsuit, upon the ground
that the plaintiff's action could not be maintained; and the court
ordered the nonsuit.   The plaintiff excepted to the ruling of the
court, and also moved for leave to amend his declaration by adding
a count in trespass *de bonis asportatis.*

*A. S. Marshall,* for the plaintiff.

*E. B. S. Sanborn,* and *George, Foster & Sanborn,* for the defendant.

NESMITH, J.  On the 14th day of March, 1860, the plaintiff, by
union of his titles, became the owner in fee of the premises occu-
pied by the defendant, beyond the power of redemption.   By ope-
ration of the assignment of Flint's deed to the plaintiff, the
defendant, in absence of any new contract, became the plaintiff's
tenant.  *Deming* v. *Cummings,* 11 N. H. 474.   It is conceded that the
occupancy of the defendant at the time of the sale and removal of
the manure, being the injury complained of, was that of a tenant

at will; for the defendant did not occupy the premises by virtue of any agreement or instrument in writing. Rev. Stat., ch. 130, sec. 12.

The wrong done here may properly be considered as voluntary waste, for which an action would lie by the reversioner against the tenant. The tenant, where there is no positive agreement dispensing with the engagement to cultivate his farm in a husbandlike manner, is bound to spend the hay and other like produce upon it, as the means of preserving and continuing its capacity of production. *Moulton* v. *Robinson*, 27 N. H. 561. Manure made upon a farm in the ordinary manner, from the consumption of its products, is regarded in this country as belonging to the realty, and would pass with the farm if sold, and may not be removed by a tenant in the absence of any special contract to the contrary. 1 Wash. on Real Actions 6, sec. 15; *Daniel* v. *Pond*, 21 Pick. 367; *Lewis* v. *Lyman*, 22 Pick. 437; *Conner* v. *Coffin*, 22 N. H. 541; *Plummer* v. *Plummer*, 30 N. H. 558; *Lassell* v. *Reed*, 6 Greenl. 222.

The tenant can neither remove the manure, nor sell it to be removed, and such sale will vest no property in the vendee. The rule here adopted is not considered as applying to manure made in a livery stable, or in any manner not connected with agriculture. But the more material question is, can the plaintiff maintain this action for the injury done to his inheritance? The tenancy here must be considered as that kind of estate at will which has the privileges and liabilities incident to the class, extending from year to year. The tenant, as a privilege, was entitled to a notice to quit. Whether he had it in this instance, or whether it was sufficient, or, if given, was waived by the landlord by permitting the tenant to occupy as he did, or whether there was a demand of rent, appears to us immaterial, provided it be made distinctly to appear that the act of the defendant in selling the manure was wrongful, and such as made him liable to the owner therefor as an act inconsistent with his tenancy, and was the commission of such waste as legally determined his tenancy. *Currier* v. *Perley*, 24 N. H. 227. If a tenant at will, holding from year to year, commit voluntary waste, he forfeits all right to notice to quit, as he thereby determines his estate. 1 Wash. R. P. 385; Bull. N. P. 96; *Phillips* v. *Covent*, 7 Johns. 1; Co. Litt. 57 a, 200 b.

There being found, then, the right of action in the plaintiff, the question recurs, what shall be the form of it? The general rule is, that to maintain trespass *quare fregit*, there must have been an actual possession in the plaintiff when the trespass was committed, or a constructive possession in respect of the right being actually vested in him, the ground of the action being the injury to the possession. 4 Kent Com. 123, 124; 3 Black. Com. 210; 3 Wood 193; 1 T. R. 480. Greenleaf says, "The general owner has a constructive possession as against his bailee or tenant, who, having a special property, has violated his trust by destroying that which was confided to him. Thus, if a tenant at will cuts down trees, the interest of the wrong-doer is thereby determined, and the possession by legal intendment immediately reverts to the owner; and

proof of the wrongful act will maintain the allegation that the thing injured was in his possession. 2 Greenl. 661, sec. 615 ; 1 Co. Litt. 57, a ; *Countess of Salop* v. *Crompton*, Cro. El. 777, 784 ; 5 Co. 13 ; *Phillips* v. *Covert*, 7 Johns. 1 ; *Erwin* v. *Olmstead*, 7 Cow. 229 ; *Campbell* v. *Proctor*, 6 Greenl. 12 ; *Daniels* v. *Pond*, 21 Pick. 367 ; *Allen* v. *Carter*, 8 Pick. 175 ; *Bartlett* v. *Perkins*, 13 Me. 89 ; *Davis* v. *Nash*, 32 Me. 411 ; *Lyford* v. *Toothaker*, 39 Me. 28 ; *Starr* v. *Jackson*, 11 Mass. 518 ; *Leenow* v. *Richie*, 8 Pick. 235 ; *Hingham* v. *Sprague*, 15 Pick. 102.

In *Ripley* v. *Yale*, 16 Vt. 260, the owner of land in the possession of a tenant at will may maintain this action for a permanent injury to the freehold. So is *Wickham* v. *Freeman*, 12 Johns. 183. The plaintiff must show an actual possession of the premises, or that he was entitled in remainder or reversion. 1 Rolle Abr. 360 ; 2 Esp. 508 ; Com. Dig., article Trespass, b, 2. *Comyn* says, " The possession of a tenant at will, who has committed voluntary waste, may be considered the actual possession of the landlord." A tenant at will cut down trees ; lessor brought trespass *vi et armis* against him, and held good ; judgment accordingly. *Walgrows* v. *Somerset*, 4 Levinz 271. Because otherwise he shall have no action, because waste was not maintained. Bac. Abr., Waste. If a tenant at will cut down timber trees, or voluntarily pull down and prostrate houses, the lessor should have an action of trespass against him, *quare clausum* ; for the taking upon him power to cut timber or prostrate houses concerneth so much the freehold and inheritance as it doth amount to a determination of his will. 1 Ins. 57, a ; 5 Co. 13, a ; Rolle Abr. 800.

In *French* v. *Fuller*, 23 Pick. 103, the court say, that in *Starr* v. *Jackson* it was decided that trespass *quare clausum fregit*, lies for the owner of land in the possession of his tenant at will, where the injury affects the permanent value of the property ; as the cutting of trees, destruction of buildings, and like acts. There could be no doubt but that the owner of land would be entitled to a remedy. The perplexing doubt of the case was as to the form of action — whether it should be trespass or case. The plaintiff failed in the action, because no injury had been done to the freehold.

But if a tenant at will cut down trees, or do any other positive injury to land or buildings, an action lies against him ; because every such injurious act amounts to a determination both of his estate and possession. 6 Bac. Abr., Trespass 593. We might multiply similar elementary decisions. We refer only to 1 Wash. on Real Actions 374, sec. 20, for a confirmation of the same doctrine. But it would seem that the doctrine would not apply in any case except that of a pure tenancy at will, where the lessor may enter at any moment ; for, where the premises have been leased for a number of years, for life, or for one year, or any definite part thereof, the lessor could not have trespass. Wash. P. P. 375, sec. 21 ; *Leenow* v. *Richie*, 8 Pick. 235 ; *Anderson* v. *Nesmith*, 7 N. H. 167. And in all these cases an action on the case would lie in favor of the reversioner. See same section : also, *Campbell* v. *Arnold*, 1 Johns. 191. Neither would the principle apply to tenancies by suf-

XLIV.        9

ferance, or where there has been a written loan and a holding over by the tenant. *Russell* v. *Fabyan*, 34 N. H. 225, and cases there cited.

This question was started but not settled in *Robinson* v. *George*, 7 N. H. 306, as the facts and decision of that case were based on other grounds. Like principles of decision apply to injuries to the freehold committed by the mortgagor while in possession, and a like remedy accrues to the mortgagee. 1 Wash. R. P. 529, sec. 27, where it is said, "Although a mortgagee may not have a technical action of waste against the mortgagor in any case, he may have trespass *quare clausum*, for any act done by him or by his authority, essentially impairing the inheritance, such as cutting timber, tearing down houses, fixtures, and the like, the mortgagor being in possession." Reference is made in the note, as authority, to *Pettengill* v. *Evans*, 5 N. H. 54; *Smith* v. *Moore*, 11 N. H. 55; *Andrews* v. *Reed*, 12 N. H. 558; *Page* v. *Robinson*, 10 N. H. 99; and four cases in Maine.

From the aforesaid facts and testimony we conclude that the defendant was the tenant at the will of the plaintiff as landlord; that, by the sale of the manure in question, he committed waste and a permanent injury to the plaintiff's freehold or inheritance; and that this action will lie as a legal remedy for the trespass committed to the plaintiff; and, therefore, the nonsuit must be set aside and a

*New trial granted.*